FRANK G. ROBINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9649.  Promulgated October 4, 1927.

1. Payment of attorney's fees made by a husband for services on behalf of his wife in her suit for separation and alimony and to his own attorney for services in securing a settlement of the proceedings *held* not deductible in the ascertainment of the husband's taxable income.

2. An alleged loss on account of a guaranteed payment of the indebtedness of a corporation in which petitioner is the principal stockholder *held* not to have been proven.

*Chas. S. Yawger, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

This appeal is from a deficiency of $477.45 determined by the respondent for the year 1920 and a claim in abatement of $3,185.43 filed by the petitioner for the same year, making a total of $3,662.88. Both claims have their basis in the refusal of the respondent to allow petitioner's claim of an expense allowance of $6,750 for attorney's fees paid by him to his own and his wife's attorneys in settlement of her suit against him for separation and for securing such settlement, and the disallowance of petitioner's claim of a loss of $15,516.04 on account of his guarantee and the assumption of payment of indebtedness of the Armstrong-Robins Corporation which became insolvent during the year.

FINDINGS OF FACT.

The petitioner is an individual residing in the State of New York. In December, 1919, his wife sued for separation. She alleged desertion, and failure to provide. In a separate instrument supporting her claim for alimony, she alleged adultery on his part, naming parties and places. Some newspapers published these allegations. Robins directed his attorney to compromise the case, giving as his reason that while the statements were untrue, their publicity was injuring him with Cannon Mills, which company was the sole source of his shade-cloth business from which he received a large percentage of his personal income. The attorney secured a settlement. Robins paid his wife's attorney $5,000. He also paid his own attorney $1,750. Claiming that these two payments were necessary business expenses, he deducted the total amount from his personal income for the year in order to ascertain his taxable income. Respondent disallowed the deduction.

The Armstrong-Robins Corporation, hereinafter sometimes designated as the corporation, organized in 1916, conducted a commission business in the purchase and sale of cotton goods and also bought

11340°—28——36

and sold cotton goods on its own account. Petitioner owned all of the preferred stock of the company and two-thirds of the common stock. In the early months of 1920 the corporation bought largely from Vieter-Achelis Co., L. W. Lawrence, and Cannon Mills. These purchases were made on credit, and in order to make them and to secure himself a commission of 2 per cent thereon, Robins gave these and other companies written guarantees of payment. Following is the form and purport of these guarantees.

GENTLEMEN: In consideration of the special commission of two (2) per cent to be allowed to me, I hereby guarantee to you the payment of your invoices which may issue in fulfillment of orders placed with you by Armstrong, Robins Corporation, of New York, or Frank G. Robins Company of Havana, Cuba, and New York, provided, of course, that such invoices are true and just and represent shipments made in accordance with specifications and terms as stated on said orders. This guarantee applies to all such invoices, whether they be made to Armstrong, Robins Corporation, Frank G. Robins Company, or customers of either of these.

This letter is intended to guarantee the financial responsibility only of the parties to whom your invoices are made in fulfillment of orders from the above mentioned sources, and in no way guarantees you against claims that may arise through your failure to properly comply with instructions, etc., although we stand ready at all times to act in your behalf in the avoidance or adjustment of all difficulties.

Yours very truly,

FRANK G. ROBINS.

In May and June, 1920, a violent depression occurred in the cotton and cotton goods market. It continued throughout the country to such an extent that on June 30th, the Armstrong-Robins Corporation was insolvent, and from then on until the close of the year was in process of liquidation. Before the close of the year, petitioner was advised by Vieter-Achelis Co. that it would look to him for payment of its credit to Armstrong-Robins Corporation. That corporation's tax return for the year 1920 shows its assets and liabilities to have been as follows at December 31, 1920.

ASSETS

| | | | |
|---|---|---|---:|
| Cash | | | $224. 53 |
| Bills receivable | | | 2, 000. 00 |
| Accounts receivable | | | 71, 907. 67 |
| Merchandise stock | | $14, 742. 71 | |
| " | " Special | 8, 861. 59 | |
| " | " Samples | 436. 11 | |
| | | | 24, 040. 41 |
| Furniture and fixtures | | | 310. 31 |
| Good will | | | 10, 000. 00 |
| | | | 108, 482. 92 |

LIABILITIES

| | | |
|---|---:|---:|
| Bills payable | | $7,500.00 |
| Accounts payable: | | |
| Trade | $77,882.45 | |
| Others | 25,976.59 | |
| | | 103,859.04 |
| Capital stock: | | |
| Common | 10,000.00 | |
| Preferred | 5,000.00 | |
| | | 15,000.00 |
| | | $17,876.12 |
| | 126,359.04 | 126,359.04 |

The good will of the corporation had no actual value at this time. The "special" merchandise stock shown in its return at $8,861.59 was actually worth only 40 per cent of that amount. This increased the balance against the company $5,316.95, making the actual book balance $23,193.07. Adding to this the value at which good will was carried on the books, gives an actual balance of $33,193.07 against the corporation.

By far the heaviest creditor of the corporation at this time was the Vieter-Achelis Co., to which it owed on account $67,194.14, on December 31, 1920. On that date it owed L. W. Lawrence, $2,686.99 and Cannon Mills, $1,143.12, making a total of $71,024.25 to these three parties. The payment of these accounts was guaranteed by petitioner in writing.

OPINION.

LANSDON: There is no question of fact as to the payments made the attorneys, but respondent does not admit that such payments were "ordinary and necessary expense of the business" in which petitioner was engaged. We concur with this view. *Sarah Backer, et al,* 1 B. T. A. 214; *John Stephens,* 2 B. T. A. 724; *David G. Joyce,* 3 B. T. A. 393.

As to whether petitioner's deduction of the loss of $15,516.04 ascertained by him to have been incurred on account of his having guaranteed the payment of indebtedness of Armstrong-Robins Corporation should be allowed is not so clear. Petitioner has proven a loss of more than double this amount by the corporation during the year 1920, but he has not proven that under his guarantee he was required to pay or did pay any of this loss out of his own personal funds. He has shown that he had guaranteed the payment of $71,024.25 of the indebtedness of the corporation, but he has also shown that at the close of the year the corporation had available for meeting its obligations, cash $224.53, bills receivable $2,000, accounts receivable

$71,907.67, merchandise $18,723.44, and furniture $310.31, a total of $93,165.95. He has not shown how much of these tangible assets he could and did use in payment of the secured debts, nor how much in payment of the unsecured debts, nor for how much or what part, if any, of the unsecured debts he was responsible as a stockholder of the corporation over and above his actual investment in its capital stock, nor the amount of such investment. These essential matters are too much in doubt to justify us in saying that the respondent erred in disallowing the deduction claimed.

Reviewed by the Board.

*Judgment will be entered for the respondent.*